Rita W. Gruber, Judge, concurring.
I agree with the majority that the circuit court's best-interest finding was not clearly erroneous. I write separately to express my concern with the circuit court's decision to dismiss Mr. Otis rather than to terminate his parental rights. The court appears to have misinterpreted our recent cases regarding the proper disposition for legal fathers in termination-of-parental-rights cases. The juvenile code defines a "parent" as "a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile" and a "putative father" as "any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(40), (47) (Repl. 2015).
*877 The circuit court recognized that Mr. Otis was not, in fact, a mere putative father but CO's presumptive legal father. He was married to Ms. Otis at CO's conception and birth and was still married to her at the time of the termination hearing. He is a parent pursuant to Ark. Code Ann. § 9-27-303(40). The court found, however, that DNA testing had excluded Mr. Otis as the biological father of CO. Although Ms. Otis suggested that another man was CO's biological father, this man never appeared in the case, and no evidence was introduced to prove his paternity. Thus, CO's only legal father was, and is, Mr. Otis.
DHS argued that the circuit court properly dismissed Mr. Otis pursuant to our recent decisions in Manohar v. Arkansas Department of Human Services , 2017 Ark. App. 482, 528 S.W.3d 881 ; Howerton v. Arkansas Department of Human Services , 2016 Ark. App. 560, 506 S.W.3d 872 ; and Wright v. Arkansas Department of Human Services , 2014 Ark. App. 676, 449 S.W.3d 721. I disagree. Manohar involved the rights of a man who married the child's mother after the child was conceived, and a DNA test subsequently determined he was not the biological father of the child. Thus, Mr. Manohar was neither the legal father nor the biological father. He had no rights to terminate, and we held that the circuit court properly dismissed him.
Wright involved a man who was initially considered the "presumptive legal father" because a court had entered a default paternity order against him in a child-support matter. DNA testing subsequently revealed that he was not the biological father, and the circuit court rescinded the order of paternity in the dependency-neglect case. Thus, he was not a presumptive legal father, biological father, or even putative father. We held he had no legal rights to terminate, reversed the circuit court's order terminating his rights, and directed the circuit court to dismiss him. Wright , 2014 Ark. App. 676, at 9, 449 S.W.3d at 725.
Finally, Howerton involved two men. Mr. Howerton was married to the mother at the child's conception and birth, and Mr. Edgar was named the father on the child's birth certificate and later determined by DNA testing to be the biological father. The circuit court found both men to be legal fathers and terminated their parental rights. Mr. Howerton appealed, arguing that the court erred in terminating rights he did not have. We agreed and reversed. We held there could not be two legal fathers and that once the circuit court found that Edgar was G.E.'s legal father, it changed Mr. Howerton's status. "By finding Edgar to be G.E.'s legal father, the circuit court effectively divested [Mr. Howerton] of all parental rights to G.E.; therefore, Mr. Howerton had no rights to G.E. that the circuit court could terminate." Howerton , 2016 Ark. App. 560, at 11-12, 506 S.W.3d at 879.
In the case at bar, Mr. Otis is a parent and a "presumptive legal father."[3] The court found no other man to be CO's legal father, thereby divesting Mr. Otis of his parental rights, as occurred in Howerton . Therefore, the circuit court should have made findings regarding those rights and an appropriate disposition based on those findings rather than dismissing him from the case.

The circuit court may terminate the rights of a presumptive legal father who "is not the biological father of the juvenile [when] the welfare of the juvenile can best be served by terminating the parental rights of the presumptive legal father." See Ark. Code Ann. § 9-27-341(b)(3)(B)(iii) (Repl. 2015).